AF Approval

Chief Approval

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:20-cr-58-T-VMC-JSS

PATSY TRUGLIA

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, Patsy Truglia, and the attorney for the defendant, Bernard M. Cassidy, mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One through Three of the Second Superseding Information (the "Information"). Counts One and Three charge the defendant with conspiracy, in violation of 18 U.S.C. § 371. Count Two charges the defendant with making false statements relating to health care matters, in violation of 18 U.S.C. § 1035.

2.    Maximum Penalties

Counts One through Three each carry a maximum sentence of five years' imprisonment, a fine of $250,000, a term of supervised release of three years, and a special assessment of $100 per felony count.  With respect to certain offenses,

Defendant's Initials 

the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of conspiracy as charged in Counts One and Three are:

First:       two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:      the defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:       during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the information; and

Fourth:      the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements of making false statements related to health care matters as charged in Count Two are:

First:       the defendant made the statement or representation, as charged, in any matter involving a health care benefit program;

Second:      the statement or representation was false;

Third:       the falsity concerned a material matter;

Defendant's Initials 

2

Fourth:     the defendant acted willfully, knowing that the
            statement or representation was false; and

Fifth:      the false statement or representation was made or
            used in connection with the delivery of or payment
            for health care benefits, items, or services.

4.    Counts Dismissed

At the time of sentencing, the pending Indictment and Superseding

Indictment charged against the defendant in this case will be dismissed pursuant to

Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, arising out of the fact

described in the plea agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to the Medicare and CHAMPVA federal health care benefit programs,

and to any other victims as determined by the Court at sentencing. The defendant

acknowledges that the final restitution amount will be determined by the Court at the

time of sentencing, but the parties estimate the restitution will be at least

approximately $18.3 million.

Defendant's Initials _CB_                3

7.    Concurrent Sentences

The United States and the defendant acknowledge and agree that the United States will not oppose a request by the defendant that any sentence imposed by the Court in this case on Counts One and Two of the Information run concurrent with any sentence imposed against the defendant in Case No. 21-8049, pending in the District of New Jersey. The United States and the defendant further acknowledge and agree that this provision does not apply to Count Three of the Information and that the United States will request that any sentence imposed by the Court in this case on Count Three run consecutive to the sentences imposed on Counts One and Two. The parties understand that any agreement between the parties in this provision is not binding on the Court and that, if an agreement in this provision is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from

4

Defendant's Initials ___

the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

5

Defendant's Initials ___

10.    Taxes - Payment and Cooperation

The defendant agrees to pay all taxes, interest, and penalties found to be lawfully owed and due to the Internal Revenue Service for the years 2018 through and including 2020, and to cooperate with and provide to the Internal Revenue Service any documentation necessary for a correct computation of all taxes due and owing for those years, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release.

11.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a), whether in the possession or control of the United States, the defendant, or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, an order of forfeiture in the amount of $11,341,738 in proceeds, which the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty, as well as the following assets, which were purchased or funded with proceeds of the offenses to which the defendant is to plead guilty:

a.    Approximately $160,531.10 seized from Bank of America account 898095299517 held in the name of Indian Shores Bracing, Inc.;

b.    Approximately $108,342.34 seized from Bank of America account 229057958245 held in the name of Cordial Medical Supply Inc.;

6

Defendant's Initials

  c. Approximately $156,924.44 seized from Bank of America account 229057958232 held in the name of Village Medical Supply Inc.;

  d. Approximately $26.68 seized from Bank of America account 356578556 held in the name of Tiger Medical Inc.;

  e. Approximately $8,521,176.71 seized from Bank of America account 229053747706 held in the name of ASP Marketing Group LLC;

  f. Approximately $221,116.79 seized from Bank of America account 898085651181 held in the name of Global One Medical Solutions LLC;

  g. Approximately $123,317.80 seized from JPMorgan Chase Bank account 276100275 held in the name of Self-Care Bracing, Inc.;

  h. Approximately $274,699.99 held by CMS for fraudulent claims submitted by Cordial Medical Supply Inc.;

  i. Approximately $418,631.36 held by CMS for fraudulent claims submitted by Indian Shores Bracing, Inc.;

  j. Approximately $452,638.56 held by CMS for fraudulent claims submitted by Self-Care Bracing, Inc.;

  k. Approximately $150,632.12 held by CMS for fraudulent claims submitted by Tiger Medical Inc.;

  l. Approximately $558,476.38 held by CMS for fraudulent claims submitted by Village Medical Supply Inc.;

  m. A 2017 Rolls Royce Wraith, VIN: SCA665C56HUX86847;

  n. A 2018 Ferrari 488 Spider, VIN: ZFF80AMA0J0232662;

  o. A 2019 Cadillac Escalade, VIN: 1GYS3DKJ6KR251577;

  p. A 2019 Lamborghini Urus, VIN: ZPBUA1ZLXKLA01913;

7

Defendant's Initials _____

q.  A 2015 Mercedes Benz CLA, VIN: WDDSJ4EB9FN162248;

r.  One stainless steel Rolex, Serial Number A184742;

s.  One men's stainless Datejust II Rolex, 41mm, Serial Number E36434Q8;

t.  A custom designed diamond bezel added to Rolex;

u.  Custom designed diamond dial designed with diamond numeral markers;

v.  One 15ct white gold diamond bracelet dipped in Rose gold, approximate total weight 3.00 carats;

w.  One men's two-tone custom design Rolex 18kt + stainless steel, Serial Number 7D7G2516, Model 126333 with Diamonds;

x.  One 14kt white gold, diamond tennis bracelet, total weight approximately 6.00 carats;

y.  One Men's Stainless Steel 41mm, Datejust II Rolex, with a custom diamond bezel and dial, Serial Number O0Q6P871;

z.  A custom diamond bezel for 41mm stainless Rolex, approximately 7.40 carats;

aa.  One two inches rose gold diamond Cuban links necklace;

bb.  A custom designed diamond cross with approximately 6.25 carats diamond;

cc.  One Franko designed chain;

dd.  One ladies 18kt white gold diamond necklace with approximately 14.50 carats;

ee.  Cuban necklace 241.6 grams and matching bracelet;

ff.  One 12 ¼ size ring;

gg.  One 14kt yellow gold diamond ring, approximate total weight 5.18 carats diamonds;

hh.  One Rolex Sky Dweller custom made with emerald cut and round diamonds rose gold 18kt;

ii.  A custom made 18kt ladies diamond eternity band, baguettes and round 5 ¼;

8

Defendant's Initials _____

  jj. Diamonds added to the band and side casing of a stainless steel 40 mm Rolex;

  kk. Two diamond custom made Italian horns with Chain 14kt;

  ll. One 14kt white gold and diamond stud cluster earring, approximately 2.0 carats;

  mm One men's ring with diamond;

  nn. Plain hoop earrings; and

  oo. The real property located at 10035 Bay Leaf Court, Parkland, Florida 33076, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

    Lot 28, Block G, Parkland Golf and Country Club Replat #2, according to the Plat thereof, recorded in Plat Book 174, Pages 137 through 161, inclusive, of the Public Records of Broward County, Florida.

    Property Identification Number: 474133052400.

The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $11,341,738 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the

Defendant's Initials _____

9

defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture

10

Defendant's Initials _____

of the property sought by the government. Pursuant to Rule 32.2(b)(4), the
defendant agrees that the preliminary order of forfeiture will satisfy the notice
requirement and will be final as to the defendant at the time it is entered. In the
event the forfeiture is omitted from the judgment, the defendant agrees that the
forfeiture order may be incorporated into the written judgment at any time pursuant
to Rule 36.

The defendant agrees to take all steps necessary to identify and locate
all property subject to forfeiture (including substitute assets) and to transfer custody
of such property to the United States before the defendant's sentencing. To that end,
the defendant agrees to make a full and complete disclosure of all assets over which
defendant exercises control, including all assets held by nominees, to execute any
documents requested by the United States to obtain from any other parties by lawful
means any records of assets owned by the defendant, and to consent to the release of
the defendant's tax returns for the previous five years. The defendant agrees to be
interviewed by the government, prior to and after sentencing, regarding such assets
and their connection to criminal conduct. The defendant further agrees to be
polygraphed on the issue of assets, if it is deemed necessary by the United States.
The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8
will not protect from forfeiture assets disclosed by the defendant as part of the
defendant's cooperation.

The defendant agrees to take all steps necessary to assist the
government in obtaining clear title to the forfeitable assets before the defendant's

Defendant's Initials                     11

sentencing. In addition to providing full and complete information about forfeitable

assets, these steps include, but are not limited to, the surrender of title, the signing of

a consent decree of forfeiture, and signing of any other documents necessary to

effectuate such transfers.

The defendant agrees that, in the event the Court determines that the

defendant has breached this section of the Plea Agreement, the defendant may be

found ineligible for a reduction in the Guidelines calculation for acceptance of

responsibility and substantial assistance, and may be eligible for an obstruction of

justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of

any fine, restitution, cost of imprisonment, or any other penalty the Court may

impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea

agreement are intended to, and will, survive the defendant, notwithstanding the

abatement of any underlying criminal conviction after the execution of this

agreement. The forfeitability of any particular property pursuant to this agreement

shall be determined as if the defendant had survived, and that determination shall be

binding upon defendant's heirs, successors and assigns until the agreed forfeiture,

including the forfeiture of any substitute assets, is final.

12

Defendant's Initials _____

## B.    **Standard Terms and Conditions**

### 1.    Restitution, Special Assessment, and Fine

The defendant understands and agrees that the Court, in addition to or

in lieu of any other penalty, shall order the defendant to make restitution to any

victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in

18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

to all counts charged, whether or not the defendant enters a plea of guilty to such

counts, and whether or not such counts are dismissed pursuant to this agreement.

The defendant further understands that compliance with any restitution payment

plan imposed by the Court in no way precludes the United States from

simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C.

§ 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to

the Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall

impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is

due on the date of sentencing. To ensure that this obligation is satisfied, the

Defendant agrees to deliver a cashier's check, certified check or money order to the

Clerk of the Court in the amount of $300.00, payable to "Clerk, U.S. District Court"

within ten days of the change of plea hearing.

Defendant's Initials                     13

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials ___

14

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),
the defendant agrees to complete and submit to the United States Attorney's Office
within 30 days of execution of this agreement an affidavit reflecting the defendant's
financial condition. The defendant promises that his financial statement and
disclosures will be complete, accurate and truthful and will include all assets in
which he has any interest or over which the defendant exercises control, directly or
indirectly, including those held by a spouse, dependent, nominee or other third party.
The defendant further agrees to execute any documents requested by the United
States needed to obtain from any third parties any records of assets owned by the
defendant, directly or through a nominee, and, by the execution of this Plea
Agreement, consents to the release of the defendant's tax returns for the previous five
years. The defendant similarly agrees and authorizes the United States Attorney's
Office to provide to, and obtain from, the United States Probation Office, the
financial affidavit, any of the defendant's federal, state, and local tax returns, bank
records and any other financial information concerning the defendant, for the
purpose of making any recommendations to the Court and for collecting any
assessments, fines, restitution, or forfeiture ordered by the Court. The defendant
expressly authorizes the United States Attorney's Office to obtain current credit
reports in order to evaluate the defendant's ability to satisfy any financial obligation
imposed by the Court.

15

Defendant's Initials _____

6.      Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor
bound by this agreement. The Court may accept or reject the agreement, or defer a
decision until it has had an opportunity to consider the presentence report prepared
by the United States Probation Office. The defendant understands and
acknowledges that, although the parties are permitted to make recommendations and
present arguments to the Court, the sentence will be determined solely by the Court,
with the assistance of the United States Probation Office. Defendant further
understands and acknowledges that any discussions between defendant or
defendant's attorney and the attorney or other agents for the government regarding
any recommendations by the government are not binding on the Court and that,
should any recommendations be rejected, defendant will not be permitted to
withdraw defendant's plea pursuant to this plea agreement. The government
expressly reserves the right to support and defend any decision that the Court may
make with regard to the defendant's sentence, whether or not such decision is
consistent with the government's recommendations contained herein.

7.      Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to
impose any sentence up to the statutory maximum and expressly waives the right to
appeal defendant's sentence on any ground, including the ground that the Court
erred in determining the applicable guidelines range pursuant to the United States
Sentencing Guidelines, except (a) the ground that the sentence exceeds the

Defendant's Initials _____

16

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

17

Defendant's Initials ___

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____

18

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

### *Introduction*

Beginning in or around January 2018, and continuing through in or around April 2019, in the Middle District of Florida and elsewhere, the defendant, PATSY TRUGLIA, as alleged in Count One of the Information, knowingly and willfully conspired and agreed with others, including Ruth Fernandez, to: defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Unite States Department of Health and Human Services ("HHS"), through its agency the Centers for Medicare and Medicaid Services ("CMS"), in the administration of the Medicare program ("Medicare"), by deceit, craft, and trickery; to make false statements relating to health care matters to the Medicare program; and to commit health care fraud and other offenses against the United States.

Thereafter, beginning in or around April 2019, and continuing through in or around July 2020, in the Middle District of Florida and elsewhere, the defendant, PATSY TRUGLIA, as alleged in Count Three of the Information, knowingly and willfully conspired and agreed with others to make false statements

Defendant's Initials ____

related to health care matters to the Medicare program, and to commit health care
fraud.

### Medicare

Medicare was a federally funded program that provided free or below-
cost health care benefits to certain individuals, primarily the elderly, blind, and
disabled. CMS was an agency of HHS, and was the federal government body
responsible for the administration of Medicare. Medicare programs covered different
types of benefits that were separated into different program parts. Medicare Part B
covered, among other things, doctors' services, outpatient care, and certain medically
necessary medical equipment.

Durable medical equipment ("DME") was reusable medical equipment
such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a
type of DME that included knee braces, back braces, shoulder braces, and wrist
braces (collectively, "braces"). Medicare reimbursed DME providers and other
healthcare providers for medically necessary items and services rendered to
beneficiaries. To receive payment from Medicare, providers submitted, or caused to
be submitted, claims to Medicare, either directly or through a billing company.
Medicare would pay a claim for the provision of DME only if the equipment was
medically necessary, ordered by a licensed provider, and actually provided to the
beneficiary. Medicare claims were required to be properly documented in accordance
with Medicare rules and regulations. Medicare would not reimburse providers for
claims that were procured through the payment of kickbacks and bribes.

20

Defendant's Initials ⟨PD⟩

*CHAMPVA*

CHAMPVA, which is a federal health benefit program, was a
comprehensive health care program in which the VA shared the cost of covered
health care services and supplies with eligible beneficiaries. In general, the
CHAMPVA program covered most health care services and supplies that were
medically necessary. CHAMPVA was always the secondary payer to Medicare and
reimbursed beneficiaries for costs that Medicare did not cover. Health care claims
must have first been sent to Medicare for processing; Medicare would then
electronically forward claims to CHAMPVA. For Medicare supplemental plans,
CHAMPVA processed the remaining portion of the claim after receiving Medicare's
explanation of benefits.

*The First Conspiracy—Count One and Count Two*

Beginning in January 2018, and continuing into April 2019, TRUGLIA
and other conspirators, including Fernandez who worked under TRUGLIA's
supervision and direction, generated fraudulent, illegal DME claims using a
"telemarketing" operation owned and controlled by TRUGLIA. TRUGLIA,
Fernandez, and others ran the telemarketing operation through multiple companies,
including Med-Connect USA LLC ("Med-Connect") and Global One Medical
Solutions LLC ("Global One").

Through the telemarketing operation, federal health care program
beneficiaries' (i.e., Medicare beneficiaries') information, including personally
identifying information ("PII") and medical information, was harvested to create

Defendant's Initials ___

21

medically unnecessary DME brace orders. The telemarketing operation also sometimes purchased the PII and related information from other third parties to create the brace orders.

TRUGLIA's telemarketing operation then forwarded the medically unnecessary DME brace orders to purported "telemedicine" vendors that, in exchange for a fee, paid illegal bribes to medical practitioners to sign the DME brace orders, often without ever contacting the beneficiaries to conduct the required telehealth consultations. Buying and selling signed medical practitioners' orders (secured by paying bribes) for use as support for claims submitted to Medicare and other Federal health care programs violates the Federal Anti-Kickback Statute. The fraudulent, illegal DME brace orders were then returned to TRUGLIA's telemarketing operation which, at least for a time, illegally sold the signed orders to third-party DME fronts as support for the fronts' fraudulent, illegal claims submitted to Medicare and other federal health care programs.

In or around early-2018, TRUGLIA and others working under TRUGLIA's direction, including Fernandez (collectively the "Truglia Faction"), began acquiring a collection of five DME fronts—Indian Shores Bracing, Inc.; Village Medical Supply, Inc.; Cordial Medical Supply, Inc.; Self-Care Bracing, Inc.; and Tiger Medical, Inc.—that operated under TRUGLIA's ownership and control and Fernandez's day-to-day management. The Truglia Faction acquired the DME fronts from a Tampa Bay-area businesswoman, Kelly Wolfe, through her company, Regency, Inc. Through these five DME fronts, from July 2018 to April 2019,

Defendant's Initials 

22

TRUGLIA, Fernandez, and other conspirators caused approximately $25 million in fraudulent, illegal DME claims to be submitted to Medicare, resulting in approximately $12 million in payments. To avoid Medicare scrutiny, Fernandez, at TRUGLIA's direction, spread the fraudulent, illegal claims across the DME fronts. Wolfe's Regency, Inc. processed and submitted the fraudulent, illegal claims to Medicare on behalf of the Truglia Faction in exchange for a 5% fee paid based upon the amount of proceeds collected.

The fraudulent, illegal DME claims submitted from the Truglia Faction's five DME fronts to Medicare were supported by signed medical practitioners' "orders" that had been created by Med-Connect and a "telemedicine" company called Comprehensive Telcare, LLC ("CompTel"), operated by conspirators Epstein and Nolan, who worked with conspirator Paul Savastano. CompTel utilized an internet-based platform that employed computer-programmed macros to create bogus supporting medical practitioner orders, such that each medical practitioner's order for a particular item of DME included certain identical supporting "objective notes."

For example, substantially all of the medical practitioners' orders for a right knee brace (Code L1851.RT) created via the CompTel platform included the same fraudulent "objective note," purportedly authored by the identified treating practitioners:

> One-Legged Stand Test was positive on the Right Knee, when performed by the patient. Joint laxity is present causing weakness and instability of the knee, knee is tender, the patient is ambulatory and has weakness that requires

Defendant's Initials  ⟨⟨⟩⟩

23

. stabilization that can benefit the patients [*sic*] function. Based on my assessment of patient, I believe the orthopedic support could lessen pain and improve mobility.

The medical practitioners electronically signed the fraudulent "orders" in exchange for illegal bribes.

During the conspiracy, TRUGLIA, Fernandez, and others committed multiple overt acts in furtherance of the conspiracy and to effect its objects. For example:

a.  On or about January 13, 2018, conspirator TRUGLIA emailed conspirator Wolfe, directing Wolfe to remove TRUGLIA's name from a "Medicare Part B Start Up Agreement" and to replace it with "C.T.," stating "[i]t will be under [C.T.'s] name."

b.  On or about January 16, 2018, TRUGLIA caused $30,000 to be transferred from a Global One bank account to an account maintained and controlled by Kelly Wolfe and Regency, Inc., associated with the creation and acquisition of Indian Shores Bracing, Inc.

c.  On or about February 28, 2018, TRUGLIA knowingly and willfully caused to be signed a Medicare enrollment application Form CMS-855S for Indian Shores Bracing, which form was submitted to Medicare that was materially false, fictitious, and fraudulent, in that the form represented to Medicare that C.T. was the sole individual with an ownership interest, a partnership interest, and/or who acted as a managing employee of Indian Shores Bracing, when such was not the case.

d.  On or about July 9, 2018, TRUGLIA caused an additional $30,000 to be transferred from a bank account maintained in the name of ASP Marketing Group LLC to an account maintained and controlled by Kelly Wolfe and Regency, Inc., associated with the creation and acquisition of Indian Shores Bracing, Inc.

e.  On or about July 10, 2018, conspirator TRUGLIA emailed conspirator Wolfe stating: "Are any other DMEs available for purchase. 1 [One] will not handle all my business."

24

Defendant's Initials ___

    f.  On or about July 27, 2018, conspirators FERNANDEZ and Wolfe exchanged emails concerning how many braces the Truglia Faction should submit per DME Front. FERNANDEZ asked: "When can we start submitting 400 braces or more?" Wolfe responded: "As far as the number of bracing I think 250-300 is a comfortable number."

    g.  On or about October 12, 2018, TRUGLIA caused an illegal kickback and bribe in the approximate amount of $83,740 to be paid to conspirator Savastano's Blue Horn Enterprises Inc.

    h.  On or about November 2, 2018, TRUGLIA caused a monetary transaction to occur in which $50,000 of health care fraud proceeds were transferred from a Self-Care Bracing, Inc. bank account (-0275) to an ASP Marketing Group LLC bank account (-7706).

*The Second Conspiracy—Count Three*

On April 9, 2019, multiple federal law enforcement agencies participated in a nation-wide action referred to as "Operation Brace Yourself" (the "Operation"). The Operation targeted ongoing schemes, such as the Truglia Faction's conspiracy described above, in which DME companies were paying illegal bribes to secure signed DME brace orders for federal health care benefit program beneficiaries that were then used as support for fraudulent, illegal claims submitted to the federal programs. In the Middle District of Florida, the April 9, 2019 Operation included, among other efforts, the execution of search and seizure warrants at several Truglia Faction DME fronts and a civil action under 18 U.S.C. § 1345, which, among other ramifications, enjoined TRUGLIA and (by extension) his five DME fronts from engaging in any further health care fraud conduct.

Defendant's Initials   _____

25

Notwithstanding, beginning in or around April 2019, and continuing into July 2020, TRUGLIA and other conspirators, some who had worked with TRUGLIA in the above conspiracy and some new conspirators, carried out a conspiracy like that thwarted by the Operation Brace Yourself effort. In that regard, TRUGLIA, Conspirator #1, LouTricia Morgan, and others created and operated a "telemarketing" company called T&T Creations of Florida LLC ("T&T Creations"), using Morgan as a straw figurehead.

TRUGLIA, Morgan, Conspirator #1, Conspirator #2, and Conspirator #3 then began creating and acquiring a new collection of three DME fronts— Advanced Medical Bracing LLC; DME Company #1; and DME Company #2 (collectively the "New DME fronts")—that operated under the ownership and control of TRUGLIA, Conspirator #1, and Conspirator #3. The New DME fronts were acquired utilizing a company located in Palm Harbor, Florida, in the Middle District of Florida.

The T&T Creations telemarketing operation, and other businesses working with T&T Creations, again targeted Medicare beneficiaries to harvest the PII and other information necessary to create DME brace orders. The conspirators forwarded the DME brace orders to purported "telemedicine" vendors that operated much like CompTel, in that, in exchange for a fee, the vendors paid illegal bribes to medical practitioners to sign the orders, often without ever contacting the beneficiaries to conduct the required telehealth consultations. The conspirators and telemedicine vendors utilized one or more internet-based platform(s) that employed

26

Defendant's Initials _TB_

computer-programmed macros to create the bogus supporting medical practitioner orders, such that each medical practitioner's order for a particular item of DME again included certain repeating "objective notes" as support.

For example, a review of medical practitioners' orders for a knee brace (Code L1833) created via one of the internet-based platforms reveals that the orders included the same fraudulent "objective note," purportedly authored by the identified treating practitioners:

> Patient has a Beighton Score of 4 and is unable to touch the floor with the palm of their hands without pending their knee(s). The conditions that aggravate the patient's knee pain are Bending, Lifting, Standing, Walking. The laxity Pivot Test is positive. The patient's knee does give out when they experience the following: When pivoting your knee. The patient does not experience the following noise in their knees: None of the above. The patient is [*sic*] high fall risk due to instability of Knee Left, Knee Right. Patient indicated noises in the knee joint, including None of the above. Pivot shift test is positive. Patient's knee(s) gives out while pivoting or twisting indicating joint laxity. Patient requires a brace to provide support, reduce pain level and improve Activity of Daily Living (ADL's).

The medical practitioners electronically signed the fraudulent "orders" in exchange for illegal bribes.

The fraudulent, illegal DME brace orders were then returned to the conspirators who used the bogus orders as support for fraudulent, illegal DME claims submitted to Medicare. In a like effort to avoid Medicare scrutiny, TRUGLIA and the other conspirators again spread the fraudulent, illegal claims across the three NEW DME fronts. Through the New DME fronts, from June 2019 to June 2020, TRUGLIA and the other conspirators caused approximately $12 million in fraudulent, illegal DME claims to be submitted to Medicare, resulting in

Defendant's Initials ⟨signature⟩

27

approximately $6.3 million in payments. In an effort to conceal TRUGLIA's

involvement in the conspiracy, TRUGLIA secured a mobile phone from an

associate and created and utilized bank accounts purportedly tied to the associate,

into which approximately $390,000 in fraud proceeds were deposited between

October 2019 and May 2020.

During the conspiracy, TRUGLIA and others committed multiple

overt acts in furtherance of the conspiracy and to effect its objects. For example:

   a. On or about May 8, 2019, one or more conspirators caused information
      to be electronically submitted to the NSC updating the DMEPOS
      supplier information for DME #1.

   b. On or about July 10, 2019, a coconspirator caused a $10,000 check
      (#3067) to be sent to a Palm Harbor-based company in the Middle

      District of Florida, noting that the check was for "Advanced Med
      Bracing Stock Purch."

   c. On or about August 12, 2019, one or more conspirators caused a
      $30,000 wire transfer to be sent to a Palm Harbor-based company in the
      Middle District of Florida, associated with the acquisition of Advanced
      Medical.

   d. On or about August 21, 2019, one or more conspirators caused a signed
      CMS Certification Statement for DMEPOS Supplier (855S) to be sent
      to the NSC, associated with the acquisition of Advanced Medical.

   e. On or about November 7, 2019, one or more conspirators caused funds
      to be distributed from T&T Creations to TRUGLIA and other
      conspirators in three equal shares of $10,000 via two T&T Creations'
      checks (#1012, #1013) and one wire transfer.

   f. On or about December 20, 2019, one or more conspirators caused funds
      to be distributed from T&T Creations to TRUGLIA and other
      conspirators in three equal shares of $15,000 via two T&T Creations'
      checks (#1051, #1052) and one wire transfer.

Defendant's Initials

28

    g.  On or about January 3, 2020, one or more conspirators caused funds to be distributed from T&T Creations to TRUGLIA and other conspirators in three equal shares of $7,000 via two T&T Creations' checks (#1068, #1069) and one wire transfer.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___4___ day of ~~September~~ October, 2021.

KARIN HOPPMANN
Acting United States Attorney

Patsy Truglia
Defendant

Tiffany E. Fields
Assistant United States Attorney

Bernard M. Cassidy
Attorney for Defendant

Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

Amanda L. Riedel
Assistant United States Attorney
Deputy Chief, Criminal Division

29